IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN TUREK, | ) | |
| | ) | |
| Plaintiff, | ) | No.  09 C 7038 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| GENERAL MILLS, INC., and KELLOGG COMPANY, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Carolyn Turek, has filed an amended complaint against defendants, General Mills, Inc. ("Mills") and the Kellogg Company ("Kellogg"), alleging that defendants marketed and sold food products in violation of the Illinois Consumer Fraud and Deceptive Practices Act (the "CFA"), 815 ILCS 505/1 *et seq.*  Defendants have moved to dismiss for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1), arguing that the complaint is preempted by the federal Nutrition Labeling and Education Act (the "NLEA"), 21 U.S.C. § 341 *et seq*.  For the reasons discussed below, the motion is granted.

**FACTS**

The facts alleged in the amended complaint are taken as true for purposes of the instant motion. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Defendants are Delaware corporations doing business in Illinois.  Defendant Mills makes, distributes (through affiliates), and advertises "Fiber One chewy bars" in the Northern District of Illinois and throughout the United States.  Mills also makes, distributes (through affiliates), and advertises "Fiber One NonFat Yogurt."  Defendant Kellogg makes, distributes (through

affiliates), and advertises "Fiber Plus Antioxidants chewy bars" in the Northern District of Illinois and throughout the United States.

Defendant Mills operates the website www.fiberone.com. The website states that fiber is found in "foods like beans and other legumes, fruits, and oat products," as well as, "whole grain products . . . and vegetables." The fiber found in the foregoing foods consists of non-digestible carbohydrates that are intrinsic and intact (i.e., found naturally) in plants. Plaintiff refers to such fiber as "natural fiber." Fiber can also be composed of non-digestible carbohydrates that have been isolated, concentrated, and chemically extracted from various plant sources. Plaintiff refers to this type of fiber as "non-natural fiber."

Kellogg advertises its "Fiber One Antioxidants chewy bars" on the front of the box as having "35% of your daily fiber" per bar. Mills does the same, advertising its "Fiber One chewy bars" on the front of the box as having "35% of your daily fiber" per bar. The fronts of "Fiber One Nonfat Yogurt" boxes state there are 5 grams of fiber per serving. All the foregoing products contain chicory root extract, which is primarily inulin, a non-natural fiber. Chicory root extract is the first ingredient listed on the food labels on all the foregoing products. Current scientific evidence does not show that inulin's health benefits are equal to those of natural fiber.

Plaintiff alleges that defendants have "violated the [CFA] by failing to disclose to consumers that their chewy bars and yogurt contain non-natural fibers, and have not been shown by current scientific evidence to possess all of the health benefits of natural fibers." In her prayer for relief, plaintiff asks for compensatory damages and declaratory and injunctive relief, including an order directing defendants to engage in a corrective advertising campaign.

## DISCUSSION

**Preemption**

Defendants argue that plaintiff's claim is expressly preempted by the federal Nutrition Labeling and Education Act (the "NLEA"), 21 U.S.C. § 341 *et seq*., which establishes a regulatory scheme for food labeling and prohibits any state requirements that are "not identical" to its requirements. 21 U.S.C. §§ 343-1(a)(4)-(5). Under the Supremacy Clause, federal law preempts state law where any of the three forms of preemption are found: (1) express preemption; (2) field preemption; and (3) and implied preemption. Hillsborough County, Florida v. Automated Med. Labs Inc., 471 U.S. 707, 713 (1985). When determining the existence of preemption, courts are guided by two major principles. Wyeth v. Levine, 129 S.Ct. 1187, 1194 (2009). First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)); Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963). Second, "in areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005); Wyeth, 129 S.Ct. at 1194-95; Medtronic, 518 U.S. at 485; Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Accordingly, defendants' preemption arguments must overcome the presumption against preemption because food labeling has been an area historically governed by state law. Holk v. Snapple Beverage Corp., 575 F.3d 329, 335 (3rd Cir. 2009) (citing Plumley v. Massachusetts, 155 U.S. 461, 472 (1894)).

The Federal Food, Drug and Cosmetic Act (the "FDCA") governs labeling and related claims that can be made with respect to food, drugs, cosmetic products, and medical devices. 21

U.S.C. § 301 *et seq*. The Food and Drug Administration (the "FDA") is an agency within the U.S. Department of Health and Human Services, responsible for regulating and supervising the safety and labeling of food, tobacco products, prescription and over-the-counter pharmaceutical drugs, and other products affecting public health. See generally Act of June 30, 1906, ch. 3915, 34 Stat. 768 (repealed and replaced by the FDCA, 21 U.S.C. § 301 *et seq*. (1938)) (creating the agency that would become the modern FDA). The FDCA authorizes the FDA to enforce its terms and issue further regulations in keeping with its framework. 21 U.S.C. § 371. The NLEA is a 1990 amendment to the FDCA, regulating nutrient content claims on food labels. 21 U.S.C. §§ 343(q), (r) . The NLEA provides that:

> [N]o State or political subdivision of any State may directly or indirectly establish under any authority . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title . . . [or] any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343® this title. 21 U.S.C. §§ 343-1(a)(4)-(5).

These introductory words clearly establish the intent of Congress to preempt non-identical requirements in the field of food labeling. See Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc., 2006 WL 839486, at *5 (D. Mass. 2006). The purpose of the NLEA, however, is not to preclude *all* state regulation of nutritional labeling, but to "prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients." H. REP. NO. 101-538, at 10 (1990). Moreover, Congress declared that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section [343-1(a)] of the [FDCA]." Pub. L. No. 101-535, 104 Stat. 2353, 2364 (Nov. 8, 1990).

In Wyeth, the Court addressed drug labeling under the FDCA and held that state failure-to-warn claims against the manufacturer of an antihistamine were not pre-empted by the FDCA. 129 S.Ct. at 1200. The Court noted that Congress' purpose was not to preempt state lawsuits with respect to drug labels. Id. "If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during FDCA's 70-year history." Id. The FDCA did not contain any express preemption provisions until the 1976 enactment of an express preemption provision relating to medical devices and the 1990 enactment of the NLEA relating to food labels. Id.; Holk, 575 F.3d at 337. Unlike the drug labeling at issue in Wyeth, there is an express preemption provision regarding the subject of the instant case, food labeling.

The NLEA prohibits non-identical "requirements." 21 U.S.C. §§ 343-1(a)(4)-(5). The term requirements "sweeps broadly." Cipollone v. Liggett Group Inc., 505 U.S. 504, 521 (1992). Requirements do not include an "occurrence that merely motivates an optional decision," such as a jury verdict that might induce a pesticide manufacturer to change its label, but requirements do include "positive enactments, such as statutes and regulations, as well as common-law duties" and judge-made rules. Bates, 544 U.S. at 443.

In Bates, the Court held that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") did not automatically preempt state law claims for breach of express warranty and the Texas Deceptive Trade Practices Act. 544 U.S. at 443. FIFRA prohibits states from imposing any "requirements for labeling or packaging in addition to or different from those required under this subchapter." Id. The Court applied a two-part test to determine whether FIFRA preempted state actions to enforce pesticide labeling: (1) whether the requirement was for "labeling and

5

packaging;" and, if so, (2) whether it imposed a requirement "in addition to or different from those required" under the FIFRA. Id. at 443-44. In Bates, the Court found that petitioner's claims for defective design, defective manufacture, negligent testing, and breach of express warranty were not preempted because none of the common-law rules expressed in those claims requires that manufacturers label or package their products in any particular way. Id. 452-53. As discussed below, several courts have used the Bates test to determine the preemptive effect of NLEA.

In Reyes v. McDonald's Corp., 2006 WL 3253579 (N.D. Ill. 2006), the court applied the two-part Bates test and held that a CFA claim was preempted by NLEA to the extent that the plaintiff's action was not identical to the requirements of NLEA. After analyzing the language of NLEA, the court determined that state actions "seeking to enforce the exact terms of the NLEA" were not preempted and there is "no requirement under Bates that a state expressly adopt the exact language of the NLEA in order to allow a cause of action to proceed." Id. at *6 (citing Bates, 544 U.S. at 447). The court concluded: "As long as Plaintiffs seek to enforce only the requirements of the NLEA, and nothing further, the holding of Bates leads to the conclusion that [an] Illinois CFA claim is not unilaterally preempted as [defendant] suggests." Reyes, 2006 WL 3253579, at *6. Ultimately, the court dismissed several counts that sought to recover under a broader definition of "misbranding" than provided for in NLEA, "resulting in an inconsistent standard for labeling." Id.

Other courts have also applied the Bates test to determine whether NLEA has preempted state-law claims. See Mills v. Giant of Maryland, L.L.C., 441 F. Supp. 2d 104, 108 (D.D.C. Aug. 2, 2006) (relying on the terms of the NLEA regulation in determining that a failure-to-warn

6

claim was preempted because it would result in an inconsistent standard); Vermont Pure Holdings, 2006 WL 839486, at *15 (D. Mass. Mar. 28, 2006) (determining that a state quality claim regarding the label "pure" was not preempted by the NLEA because the NLEA sets forth no requirement regarding that term; and permitting a state claim regarding the term "spring water" in so far as it seeks to enforce identical requirements as the NLEA).

In the instant case, plaintiff's claims would require defendants to label their products in a particular way. Plaintiff does not allege that defendants violated the labeling requirements of the NLEA or that they failed to disclose the presence or amount of chicory root extract, inulin, in their products; instead, plaintiff alleges that defendants violated the CFA by failing to disclose that the fiber in their products is "non-natural" and that it does not contain certain health benefits. Additionally, plaintiff alleges that by describing the health benefits of fiber on a website, defendants are misleading consumers by labeling their products as containing "fiber." Plaintiff seeks declaratory relief and an injunction requiring defendants to engage in a corrective advertising campaign. These forms of relief do not merely induce defendants to change the labeling on their packages; they are requirements relating to the labeling of food.

Plaintiff argues that the NLEA does not govern front-of-package labeling and so the NLEA could not preempt plaintiff's claims against defendants for labeling their products as containing "fiber" on the fronts of packages. The NLEA, however, contains no such distinction. The term "labeling" encompasses "all labels and other written, printed or graphic matter . . . accompanying such article." 21 U.S.C. § 321(m). The NLEA's nutrient content claims provision applies to a claim "made in the label or labeling of the food which expressly or by implication . . . . characterizes the level of any nutrient." FDA regulations further state that a nutrient content

claim includes "any direct statement about the level (or range) of a nutrient in the food . . . or [a statement that impliedly describes] an ingredient in a manner that suggests that a nutrient is . . . present in a certain amount." 21 C.F.R. § 101.13(a)(1). Accordingly, the NLEA applies to statements defendants make on the front of packages as well as on the nutrition fact labels.

Consequently, the court must consider whether the requirements posed by the instant action are identical to the requirements in the NLEA. 21 U.S.C. § 343(q)(1)(D) requires food labels to bear "nutrition information that provides . . . the amount of . . . dietary fiber . . . contained in each serving size or other unit of measure." Section 343(q) authorizes the Secretary of Health and Human Services to remove or add information relating to nutrients on food labels by regulation, if it will "assist consumers in maintaining healthy dietary practices." 21 U.S.C. § 343(q)(2). The NLEA also specifies what nutrient content and health claims can and cannot be made on labels, either expressly or by implication. 21 U.S.C. § 343(r)(1). Claims that a food is high in fiber may be made only if the food is also low in fat or if the label discloses total fat content in proximity to the fiber claim. 21 U.S.C. § 343(r)(2)(A)(v).

State laws may be preempted by federal regulations as well. Hillsborough County, 471 U.S. at 713. Federal regulations further specify how dietary fiber must be disclosed, distinguishing only between soluble and insoluble fiber. 21 C.F.R. § 101.9(a)(1); (c)(6)(i)(A)-(B). The regulations also determine what health claims may be made with respect to dietary fiber. See 21 C.F.R. § 101.76 (regulating claims on the relationship between reducing the risk of cancer and fiber containing grain products); 21 C.F.R. § 101.77 (regulating claims of the relationship between dietary fiber, particularly soluble fiber, from fruits, vegetables, and grain products and lowering the risk of heart disease); 21 C.F.R. § 101.81 (regulating claims of the

relationship between soluble fiber from certain foods and reduction of risk of heart disease); 21 C.F.R. § 101.54(d)(1)-(2) (regulating labeling requirements for nutrient content claims "made with respect to the level of dietary fiber, that is, that the product is high in fiber, a good source of fiber, or that the food contains 'more' fiber"). Additionally, the nutrient inulin is recognized among "nonorganically produced agricultural products [that] may be used as ingredients in or on processed products labeled as 'organic'" 7 C.F.R. § 205.606

Courts interpreting the preemption provision of the NLEA have defined the term "identical" as language that is "substantially the same language as the comparable provision of the [FDCA], and that any difference does not result in the imposition of materially different requirements." Reyes, 2006 WL 3253579, at *6; Vermont Pure, 2006 WL 839486, at *5. Section 343-1(b) of the NLEA also provides a mechanism by which a state could impose requirements without violating the preemption provision:

> Upon petition of a State or a political subdivision of a State, the Secretary may exempt from [the preemption provision] . . . any State or local requirement that . . . is designed to address a particular need for information which is not met by requirements of the sections referred to in subsection (a) of this section. 21 U.S.C. § 343-1(b).

In the instant case, the cited provisions support express preemption: (1) the preemption provision of the NLEA that establishes the clear and manifest intent of Congress to prohibit non-identical food labeling requirements; (2) the substantive regulations relating to labeling items as containing fiber and the accompanying health claims; and (3) the regulations that allow using inulin in food products, labeling those products as fiber, and governing how such products may be labeled – with the term "organic," for example. Further, the only distinction the FDA currently makes between types of fiber is whether they are "soluble" or "insoluble."

In Holk, the court determined that the NLEA did not preempt state consumer fraud actions brought against Snapple Beverage Corp. for the use of the term "natural" on its drink products. 575 F.3d at 342. The court noted that the FDA contained no requirement regarding the term "natural." Id. at 341. Further, the FDA stated that it declined to define "natural," because there were still "many facets of the issue that the agency will have to carefully consider if it undertakes a rulemaking to define the term 'natural.'" Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed.Reg. 2,302, 2,407 (Jan. 6, 1993). The Holk court cited this to demonstrate the lack of deliberation and formality needed to create field or implied preemption. 575 F.3d at 341. Although the Holk court concluded that the manufacturer waived its express preemption argument, the court suggested that express preemption would fail because the consumer fraud action was not trespassing on federal regulations regarding nutrition labeling. 575 F.3d at 336, n. 3. The court noted an important distinction: the federal statute in question was a disclosure requirement (i.e., regulating what a company must put on its label regarding nutrition), whereas the consumer fraud action went to what a company could not put on its label for the purposes of commercial marketing. Id.

In the instant case, in contrast, plaintiff wants to change the labeling on defendants' products because she questions the nutritional science behind current disclosure requirements and not because of any fraudulent statements made for the purposes of commercial marketing. This court is addressing express preemption and must look to whether plaintiff's proposed requirements are identical to the current requirements. Clearly, new requirements that direct manufacturers to label certain fiber nutrients as "non-natural" and to disclose alleged lack of

health benefits are non-identical to and materially different from the current NLEA requirements that do allow inulin to be labeled simply as "fiber" and do not require manufacturers to disclose any lack of health benefits. Defendants in the instant case have overcome the presumption against preemption due to the particularly strong preemptive language of the NLEA, its thorough regulation of fiber, and the inconsistent labeling that plaintiff's claim would require. Consequently, plaintiff's CFA claims against defendants are expressly preempted by the NLEA.

## CONCLUSION[1]

For the reasons described above, defendants' motion to dismiss for lack of subject-matter jurisdiction is granted.

**ENTER:** September 1, 2010

_____
**Robert W. Gettleman**
**United States District Judge**

---

[1] Since the motion to dismiss is granted on the basis of preemption, the court does not address the parties' other arguments.