

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-3267

CAROLYN TUREK,

                              *Plaintiff-Appellant*,

      *v.*

GENERAL MILLS, INC. and KELLOGG CO.,

                              *Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-07038—**Robert W. Gettleman**, *Judge*.

ARGUED SEPTEMBER 9, 2011—DECIDED OCTOBER 17, 2011

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.  The district court dismissed this diversity class action suit (which seeks damages and other relief for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510) for want of federal subject-matter jurisdiction, on the ground that the claims are barred by federal law. There are two initial puzzles. The

first is why, although the plaintiff's complaint clearly and in great detail describes the suit as a class action suit, the district judge did not mention that it was a class action suit or consider whether it should be certified as a class action; nor do the captions in this court indicate that it *is* a class action. Apparently the plaintiff never even sought class certification, and in those circumstances the dismissal of the plaintiff's claim terminates the suit. *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999); see also *Board of School Commissioners of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30 (1975) (per curiam). Only after a class is certified can the suit survive dismissal of the named plaintiff's claim, by substitution of another member of the class as named plaintiff.

The second puzzle is the dismissal of the suit for want of federal jurisdiction. The district judge ruled that the plaintiff's claims were preempted (barred) by federal law, but the fact that a defendant has a good defense to a state law claim does not mean that the complaint does not invoke federal jurisdiction. There is an exception to this principle, called "complete preemption"—"a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field," *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000)—for cases in which federal law so pervades a field that any claim purportedly based on state law would actually be based on federal law, state law having been totally displaced by federal. *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003). Were this a case of complete preemption the plaintiff's purported state claim would actually be a

federal claim. The claim would invoke federal jurisdiction but would be quickly dismissed on the merits because there is no basis for the claim in federal law. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561 (1968); *Fayard v. Northeast Vehicle Services, LLC*, 533 F.3d 42, 45-46 (1st Cir. 2008).

The district judge did not allude to complete preemption, and this is not a case within its scope, because the preempting statute—the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353—disclaims federal occupation of the field. Section 6(c)(1), 104 Stat. 2364, says the Act "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act." So the plaintiff's state law claim is a genuine state law claim, and one within the diversity jurisdiction. If it is preempted, dismissal is the proper outcome—but dismissal on the merits, with prejudice like other merits judgments, not dismissal for want of federal jurisdiction.

To the merits, then. The plaintiff's targets are "chewy bars" made and sold by the defendants. (These should not be confused with the product sold by Quaker Oats under its trademark "Quaker Chewy Bars," which is not at issue in this case, though there is a similar case involving that product: *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010).) Typical is Kellogg's chocolate-chip bar "Fiber Plus." A side panel of the Fiber Plus box contains a table captioned "Nutrition

Facts" (the table is required on packages of all packaged food items, 21 U.S.C. § 343(q)(1); 21 C.F.R. § 101.9) which states that a serving contains 9 grams of "Dietary Fiber" and that this is 35 percent of one's "Daily Value" of dietary fiber. On the front of the box a circle encloses the words "**35%** of your daily **fiber**."

The complaint alleges that the principal fiber, by weight, in Fiber Plus bars (as in the other chewy bars made by the defendants) is inulin extracted from chicory root. The complaint describes inulin so extracted (as distinct from inulin found, and consumed without its having been processed, in bananas, onions, leeks, Jerusalem artichokes, and other vegetables) as a "non-natural" fiber. This may seem an odd way to describe inulin derived from chicory root, a plant; but what is meant is that this inulin is processed, whereas if you eat a banana you are getting inulin in an unprocessed form. Nowhere does the Fiber Plus box state that the principal fiber is inulin from chicory root, though the label does list "chicory root extract" first, and "inulin from chicory root" a few items later, in the list of the product's ingredients.

The complaint alleges that inulin provides fewer of the benefits of consuming fiber (these are mainly promoting the regularity of bowel movements, lowering cholesterol, and making it easier to avoid gaining weight), causes stomach problems in some people, and is harmful to women who are pregnant or breast feeding. Nowhere does the package state that the product contains a form of fiber that is inferior to "natural" fiber

Case: 1:09-cv-07038 Document #: 47 Filed: 11/09/11 Page 5 of 8 PageID #:214
Case: 10-3267 Document: 00711645580 Filed: 11/09/2011 Pages: 8

and actually harmful to some consumers. (Although the procedural posture of the case requires us to assume the truth of the plaintiff's allegations, we of course do not vouch for their truth, which the defendants vigorously contest.)

The complaint thus states a garden-variety consumer protection claim, but one blocked, the district judge ruled, by federal law. A provision of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343-1(a)(5), added by the Nutrition Labeling and Education Act of 1990, forbids states (or their political subdivisions, a qualification we can ignore) to impose "any requirement respecting any claim of the type described in section 343(r)(1) [of the Food, Drug, and Cosmetic Act] . . . made in the label or labeling of food that is not identical to the requirement of section 343(r)." The state thus can impose the *identical* requirement or requirements, and by doing so be enabled, because of the narrow scope of the preemption provision in the Nutrition Labeling and Education Act, to enforce a violation of the Act as a violation of state law. See also *In re Pepsico, Inc. Bottled Water Marketing and Sales Practices Litigation*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); "Beverages: Bottled Water," 60 Fed. Reg. 57076, 57120 (Final Rule, Nov. 13, 1995). This is important because the Food, Drug, and Cosmetic Act does not create a private right of action. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996); *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000).

A state can also ask the Food and Drug Administration to exempt from the requirement of "identicalness" a

6                                                          No. 10-3267

state (or local) requirement "designed to address a particular need for information which need is not met by the requirements" imposed by federal law. 21 U.S.C. § 343-1(b)(3). But neither Illinois nor any of its political subdivsions has obtained—or even, as far as we know, sought—such an exemption.

It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy.

The critical question presented by the appeal is therefore what requirements the federal law imposes on the labeling of dietary fiber. Section 343(r)(1)(A) governs "a claim . . . made in the label or labeling of . . . food which expressly or by implication characterizes the level of any nutrient which is of the type required by [section 343](q)(1)." So we go to section 343(q)(1) and find in subsection (D) a requirement (the only statutory labeling requirement that is pertinent to this case) that the "label or labeling" of food products intended for human consumption state "the amount of . . . dietary fiber . . . contained in each serving size or other unit of measure." Other requirements for labeling claims relating to dietary fiber are set forth in implementing regulations of the Food and Drug Administration the validity of which is not challenged. The form and content of such claims are set forth in 21 C.F.R. § 101.54(d). The labeling of Fiber Plus and the other products chal-

No. 10-3267                                                              7

lenged by the plaintiff is compliant with that regulation and with the other regulations relating to health claims for dietary fiber. See, e.g., 21 C.F.R. § 101.76. All the FDA's requirements relating to labeling that mentions dietary fiber are incorporated in section 343(r)(1) as requirements to which any labeling disclosures required by a state must be identical. Cf. *City of New York v. FCC,* 486 U.S. 57, 63-64 (1988).

The disclaimers that the plaintiff wants added to the labeling of the defendants' inulin-containing chewy bars are not identical to the labeling requirements imposed on such products by federal law, and so they are barred. The information required by federal law does not include disclosing that the fiber in the product includes inulin or that a product containing inulin produces fewer health benefits than a product that contains only "natural" fiber, or that inulin from chicory root should not be consumed by pregnant or lactating women. The only mention of inulin that we have found in a federal regulation appears in a regulation issued by the Department of Agriculture that lists inulin as one of the "nonorganically produced agricultural products [that] may be used as ingredients in or on processed products labeled as 'organic.'" 7 C.F.R. § 205.606(m). The term "nonorganically produced" indicates that the reference is to, or at least includes, inulin extracted from chicory root.

Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the

test; identity is. Maybe such disclaimers would be a good thing (an issue on which we take no position) and the FDA should require them, but that is irrelevant to this appeal.

Although it is merely icing on the cake, we add that the plaintiff's suit fails to state a claim under the principal Illinois law on which she pitches her case. The Illinois Consumer Fraud and Deceptive Business Practices Act does not apply to "actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). The representations on the packaging of the defendants' chewy bars concerning dietary fiber are specifically authorized by the federal statutes and regulations that we've discussed.

We have not mentioned all the issues presented by the plaintiff's appeal because her claims relating to some of them are frivolous, insufficiently explained in her briefs to be intelligible, or forfeited because they were not presented in the district court.

The judgment of the district court is altered to a judgment of dismissal under Fed. R. Civ. P. 12(b)(6) with prejudice, and so altered is

AFFIRMED.